## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MARIA RODRIGUEZ DIAZ, ET AL.,

    Plaintiffs,

       v.

JEAN ANDRES PEREZ
RODRIGUEZ, ET AL.,

    Defendants.

**Civil No. 14-1651 (DRD)**

## JOINT INITIAL SCHEDULING CONFERENCE MEMORANDUM

TO THE HONORABLE COURT:

COME NOW the parties and, pursuant the Initial Scheduling Order, Docket No. 64, respectfully submit the following joint memorandum:

### I.    <u>Factual and Legal Contentions</u>

**A. Plaintiffs' factual and legal contentions**

On September 27, 2013, Angel Luis Fernańdez Rodríguez was a passenger in a vehicle that was driving southbound on Route 176 in the area of Cupey in San Juan, Puerto Rico at approximately 10:00 p.m. at night. Defendant Jean Andres Pérez Rodríguez was driving a vehicle northbound on Route 176 when he failed to stop at a red traffic light at the intersection of

1

Calle San Javier. Defendant Pérez Rodríguez' was driving while intoxicated when he crashed into the vehicle in which Angel Luis Fernandez Rodríguez was a passenger. Angel Luis Fernandez Rodriguez suffered severe injuries as a result of the impact, which ultimately led to his untimely death. The vehicle driven by Defendant Pérez Rodríguez was owned and insured by his brother Defendant Marcel Andres Pérez Rodríguez and injured by Defendant Optima Insurance Company. After San Juan Police Officer, Jose Andujar Maldonado arrived at the scene, Defendant Jean Andres Pérez Rodríguez was arrested for the crime of driving while intoxicated and taken to the San Juan Precinct for processing on September 27, 2013.

Angel Luis Fernańdez Rodríguez received treatment at Centro Médico but despite the valiant efforts by the doctors and medical staff they were not able to save him, and eventually died at 5:00 p.m. the next day due to severe bodily trauma. Angel Luis Fernańdez Rodríguez was forty-nine (49) years old when he died unexpectedly due to the erratic, negligent driving of Defendant Jean Andres Pérez Rodríguez.

Angel Luis Fernańdez Rodríguez was a loving son and caretaker of his mother, Plaintiff Maria Rodriguez Diaz and both lived together in Las Piedras, Puerto Rico. Unfortunately, as a result of her son's death, Plaintiff Maria Rodriguez Diaz had to leave her home in Puerto Rico, where she had lived for fifty (50) years, to live and be cared for by her daughter, Plaintiff Maria del C.

Ferrer in Escondido, California. Plaintiff Maria Rodríguez Diaz was seventy-six (76) years old at the time of the incident when her son died suddenly. Her only son and primary caregiver was Angel Luis, who lived with her because she has serious health conditions[1] that require the assistance of a caregiver. Angel Luis was her company, her everything. He was in charge of his mother Plaintiff Maria Rodríguez Diaz, and would take her to medical appointments, to pick up medications, cleaned the house, washed her clothes, cooked meals and managed the bills. Despite having many health conditions, she was happy because Angel Luis took very good care of her.

Angel's untimely death deprived him of the pleasure of sharing his life with his mother, sisters, extended family and friends over many more years. The damages of Angel Luis Fernańdez Rodríguez, deceased, including but not limited to his pain and suffering before dying, are reasonably valued at a sum in excess five (5) million dollars. These damages are inherited by his rightful heirs, including Plaintiffs herein.

Plaintiff Maria Rodríguez Diaz has suffered and continues to suffer great mental anguish and moral pain because of her son's death. Maria Rodríguez Diaz has lost her son's love, support, guidance, care and companionship. She has been deeply affected emotionally because of her son's death whom she

---

[1] Plaintiff Maria Rodríguez Diaz, mother of Angel Luis, has severe osteoporosis, heart problems, multiple rib fractures, high blood pressure, cholesterol, diabetes, knee problems and other health conditions. She needs someone to care for her all the time which is why Angel Luis lived with her.

expected to continue taking care of her until her death. Maria Rodríguez Diaz will also necessarily incur medical expenses in the future – and has incurred such expenses in the past – in order to treat her emotional condition. Maria Rodríguez Diaz's damages in this case are reasonably valued at a sum in excess of three (3) million dollars.

Plaintiff Maria del C. Ferrer is the sister of Angel Luis Fernańdez Rodríguez, deceased. She has suffered and continues to suffer great mental anguish and moral pain because of her brother's death. Maria del C. Ferrer has lost her brother's love, guidance and relationship. She has been deeply affected emotionally because of her brother's death. Maria del C. Ferrer will also necessarily incur medical expenses in the future – and has incurred such expenses in the past – in order to treat her emotional condition. Maria del C. Ferrer's damages in this case are reasonably valued at a sum in excess of two (2) million dollars.

Plaintiff Carmen Cruz is the sister of Angel Luis Fernańdez Rodríguez, deceased. She has suffered and continues to suffer great mental anguish and moral pain because of her brother's death. Carmen Cruz has lost her brother's love, guidance and relationship. She has been deeply affected emotionally because of her brother's death. Carmen Cruz will also necessarily incur medical expenses in the future – and has incurred such expenses in the past –

in order to treat her emotional condition. Carmen Cruz's damages in this case are reasonably valued at a sum in excess of two (2) million dollars.

Pursuant to 31 L.P.R.A. § 5141 and 5142, Codefendants Jean Andres Pérez Rodríguez, Marcel Andres Pérez Rodríguez, and Marcel Pérez Graulau, Optima Insurance Company, and Unknown Insurance Companies "A" through "B", had a duty to drive responsibly in accordance with the Puerto Rico traffic laws. Notwithstanding Codefendants Jean Andres Pérez Rodríguez, Marcel Andres Pérez Rodríguez, and Marcel Pérez Graulau, Optima Insurance Company, and Unknown Insurance Companies "A" through "B", breached that duty as set forth above.

Material or moral harm gives rise to indemnity when three elements concur: (1) the harm suffered is established; (2) a nexus exists between the harm and the action or omission of the other person, and (3) said act or omission is negligent. *Santini Rivera v. Serv. Air, Inc*., 137 D.P.R. 1 (1994). In this particular case, Angel Luis Fernandez Rodriguez died as a direct result of the reckless driving of Defendant Jean Anres Perez Rodriguez. His nonobservance, carelessness, and negligence while operating a motor vehicle is sufficient grounds for filing an action under 31 L.P.R.A. § 5141. *Tapia v. Martinez*, 70 P.R.R. 53 (1949).

Defendant Marcel Pérez Graulau, as Defendant Jean Andres Pérez Rodríguez's father, is responsible and vicariously liable for the negligent acts

and/or omissions incurred by Defendant Jean Andres Pérez Rodríguez herein, who resides with his father. Defendant Marcel Pérez Graulau was also negligent in his ineffective monitoring and lack of supervision of his son, Defendant Jean Andres Pérez Rodríguez.

Defendant Marcel Andres Pérez Rodríguez is liable for the negligent acts and/or omissions incurred by his brother Defendant Jean Andres Pérez Rodríguez as the owner of the vehicle driven by his brother, Defendant Jean Andres Pérez Rodríguez, at the time of the incident causing the death of Angel Luis Fernańdez Rodríguez.

There is a clear and direct causal link between the negligent acts and/or omissions of Defendants Jean Andres Pérez Rodríguez, Marcel Andres Pérez Rodríguez, and Marcel Pérez Graulau, and the damages claimed in this case.

Moreover, the pain, suffering and mental anguish suffered by Plaintiffs, relatives of Angel Luis Fernandez Rodriguez, who was killed by the vehicle driven by Defendant Jean Andres Perez Rodriguez, the expenses for Angel Luis Fernandez Rodriguez's care because he did not die immediately, and the damages for loss of services, constitute indirect damages to said relatives — that is, damages arising out of the primary bodily injury sustained by one person, Angel Luis Fernandez Rodriguez. *Ferrer v. Lebron Garcia*, 103 D.P.R. 600 (1975).

Pursuant to 26 L.P.R.A. § 2003, Defendants Optima Insurance Company and Unknown Insurance Companies A through B have a contractual obligation to compensate those who are damaged by the negligence and/or omissions of Codefendants Jean Andres Pérez Rodríguez, Marcel Andres Pérez Rodríguez, and Marcel Pérez Graulau. These defendants committed negligence with respect to Angel Luis Fernańdez Rodríguez. Moreover, there is a clear and direct causal link between their misconduct and the damages sustained by Fernańdez Rodríguez and consequently the Plaintiffs, as set forth above.

Under 26 L.P.R.A. §2003, Plaintiffs have a right to reclaim directly against the corresponding insurers of Codefendants Jean Andres Pérez Rodríguez, Marcel Andres Pérez Rodríguez, and Marcel Pérez Graulau

## B. Individual Defendants' factual and legal contentions

The unfortunate accident that led to this lawsuit occurred on Friday, September 27, 2013, at approximately 9:48 p.m., while third-party defendant David Crespo López and Angel Luis Fernández Rodríguez were on their way to an undisclosed place to have a "good time." At all times relevant hereto, David Crespo had only a learner's permit. The night of the accident, Crespo and Fernandez Rodríguez met at a bar in Hato Rey. After heading out, however, Fernández Rodríguez passed the keys to his 2013 Honda Civic SUV to Crespo, presumably because the former had been drinking. Crespo thus

began driving under the supervision of Fernández Rodríguez, who sat as passenger.

As Crespo followed Fernández Rodríguez's instructions and directions—Crespo knew neither their destination's location nor its surrounding areas—there was a collision between the car driven by co-defendant Jean Andrés Pérez-Rodríguez ("Jean Andrés") and the car driven by Crespo. Despite a red traffic light, Crespo turned left at the intersection where the car collision took place, abruptly invading Jean Andres' right of way. Regrettably, Fernández Rodríguez passed away after the accident.

As a result of this accident, Jean Andrés was subject of a hearing to determine probable cause under Rule 6 of the Puerto Rico Rules of Criminal Procedure. But the Magistrate presiding the Rule 6 hearing found no probable cause for the alleged violation. And because the Department of Justice never appealed the Magistrate's ruling, the criminal proceedings against Jean Andrés are final.

The plaintiffs, as purported heirs of the deceased, seek damages against Jean Andrés, his father, Marcel Pérez Graulau, and his brother, Marcel Andres Pérez Rodríguez. (The plaintiffs also sued Jean Andrés's uncle, but the claims against him were dismissed with prejudice, Docket No. 62.)

Assuming for the sake of argument that the Court's diversity jurisdiction is proper here, Puerto Rico law would control the substantive outcome. *See Erie*

*R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As relevant here, Article 1802 establishes that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. A claimant seeking relief under this article must establish "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." *Soc. Gananciales v. Padin Co., Inc.*, 17 P.R. Offic. Trans. 111 (1986). The existence of an injury or damages alone is not grounds for liability under Article 1802, however, as a defendant is liable only for those reasonably foreseeable consequences associated with his acts or omissions. *De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc.*, 160 F.3d 839, 842 (1st Cir .1998). Article 1803, for its part, prescribes the imposition of vicarious liability—pertinently, "the father . . . is liable for the damage caused by the minor children living with them"—but makes clear that no such liability will attach "when the liable persons mentioned therein prove that they employed all the diligence of a good father of a family to preclude the damage." P.R. Laws Ann. tit. 31 § 5142.

Here, Jean Andrés was not negligent. But even if he had been, Crespo's negligence was the proximate cause of the accident. Despite a red traffic light, Crespo turned left at the intersection where the car collision took place, abruptly invading Jean Andrés's right of way. This suffices to dismiss all claims against all the individual defendants.

Under Puerto Rico's Vehicle and Traffic Act, moreover, Fernández Rodríguez, as owner of the Honda Civic, is responsible for the negligent acts or omissions of Crespo at the time of the collision. Thus, the alleged damages— both the survivorship and the plaintiffs' own claims—must be set-off given Fernández Rodríguez's comparative negligence. *See Mejias-Quiros v. Maxxam Prop. Corp.*, 108 F.3d 425, 427 (1st Cir. 1997). Put differently, Fernández Rodríguez's heirs are jointly and severally responsible for Jean Andrés's damages, given that Fernández Rodríguez voluntarily authorized David Crespo—whom he barely knew—to drive his Honda Civic. To make matters worse, the Puerto Rico Vehicle and Traffic law provides in pertinent part that "[a]ny person to whom a learner's permit is issued may drive a motor vehicle on public roads . . . provided that he/she is accompanied by a driver who . . . *must be in such a physical and mental condition so as to allow him/her to act and instruct the learner* and take charge of driving the vehicle if necessary." P.R. Laws Ann. tit. 9 § 5058 (emphasis added).

Meanwhile, the plaintiffs appear to request the hedonic damages purportedly suffered by Fernández Rodríguez for the loss of the pleasure of being alive, but that is improper under Puerto Rico law. *See* Cintrón Adorno v. Gómez, 147 P.R. Dec. 576 (1999). Although Plaintiffs appear to claim that they are among the rightful heirs to Fernández Rodríguez, the amended complaint is silent (among other things) about whether Fernández Rodríguez was

10

survived by any descendants; or, if there are no descendants, whether co-plaintiff María Rodríguez Díaz (decedent's mother) was his only ascendant at the time of death. In any event, decedent's purported sisters cannot be rightful heirs if Rodríguez Díaz was alive at the time of death.

Assuming for the sake of argument that Jean Andrés were liable to the plaintiffs under Article 1802, the Article 1803 claims against Pérez-Graulau lack merit. This is so because he was diligent in the upbringing and supervision of his son, Jean Andrés.

### C. Q.B. E Optima Insurance's factual and legal contentions

The accident that led to the instant case took place on Friday, September 23, 2013, at approximately 9:48 pm. On that date and time, deceased Ángel Luis Fernández Rodríguez (hereinafter referred to as "Ángel Luis") and third party defendant David Crespo (hereinafter referred to as "Crespo") were in Ángel Luis' car on there way to have a "good time". At the time of the accident Crespo was driving Ángel Luis' vehicle at his request. Earlier in the day, Ángel Luis had called Crespo to invite him out to "have a good time". Crespo worked at a stripper club in Santurce frequented by Ángel Luis. At that time Crespo and Ángel Luis had no each other for about a month, and Crespo did not even know Ángel Luis' last name. They agreed that once Crespo finished work, he would drive over to the bar where Ángel Luis was to pick him up. When Crespo arrived to pick Ángel Luis up, the latter had been drinking in the bar for an

undetermined amount of time. Once Crespo arrived, both them spent another 10-15 minutes in the bar while Ángel Luis finished his drink.

When they left the bar Ángel Luis gave Crespo his Honda Civic to drive. Ángel Luis was in the front seat giving Crespo instructions and directions as Crespo did not know where he was driving to. At the time Crespo did not have a driver's license, only a learner's permit, something that Ángel Luis knew or should have known. Ángel Luis' driving instructions took them to the Cupey area, a place that Crespo was not familiar with. When they arrived at the intersection with Route 176 where the accident occurred, Ángel Luis instructed Crespo to take the "Only" lane ("Solo") as they would be turning left. They then turned left while their traffic light was still red. By this act of negligence they invaded the right of way of codefendant Jean Andrés Pérez Rodríguez, who was driving North on Route 176. Route 176 has a prominent slope just before the intersection which prevented both passengers and Ángel Luis from seeing each vehicle from a distance. Unfortunately, when both vehicles were in a position of visibility it was too late as Ángel Luis' vehicle was in the middle of the main road in Jean Andrés lane. Despite Jean Andrés best efforts to avoid the Honda Civic, both cars ultimately collided.

Right after the accident Crespo approached Jean Andrés vehicle and in a harsh tone told Jean Andrés to swear that he (as opposed to Crespo) was the one who ran the red light.

Jean Andrés had to go through the ordeal of a criminal proceeding inasmuch as Crespo misrepresented to the police officers investigating the scene that it was he that ran the red light. He was exonerated of these false charges.

Puerto Rico's Civil Code Article 1802, states that "[a] person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the damage so done."  P.R. Laws Ann. tit. 31, § 5141 (1990). Three elements must be met to establish a claim under Article 1802: first, proof of the reality of the damage suffered; second, a causal relation between the damage and the action or omission of another person; and third, said act or omission is negligent or wrongful.

For purposes of Article 1802, there is a causal relationship between an omission and an injury when the injury was reasonably foreseeable and could have been avoided had the defendant performed the omitted act.  Tormos-Arroyo v. Dept. of Education of the Commonwealth of Puerto Rico, P.R. Dec., 96 J.T.S. 34.  An omission is negligent or wrongful when the defendant had a duty to act, yet failed to do so, and as a result a foreseeable injury occurred.

According to the above, foreseeability constitutes an essential criterion both for the element of a 'negligent' act as for the element of causal relation--or legal cause or proximate cause--of the tort action. Herminio M. Brau del Toro, 1 Daños y Perjuicios Extracontractuales [Torts ] 184 (1986).  In addition, even where there is a duty of care, the Court must still determine what *degree* of

13

care is required by considering the foreseeability of an injury, the nature and magnitude of the injury, and what a reasonable and prudent man would have done under the same circumstances. *See generally* Herminio M. Brau del Toro, 1 *Daños y Perjuicios Extracontractuales* [*Torts* ] 183-89 (1986). *See also* Carlos J. Irrizarry Yunqué, *Responsabilidad Civil Extracontractual* [*Torts* ] 178-200 (2d ed. 1996).

The duty of care may therefore be defined as an obligation to anticipate and take measures against a danger that is reasonably foreseeable. The element that the negligent or wrongful act or omission be reasonably foreseeable is of utmost importance to impose liability for **"[t]he norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities.** Brau del Toro, 1 *Daños y Perjuicios Extracontractuales* [*Torts* ] at 185.

No one shall be held liable for events which could not have been foreseen, or which having been foreseen were inevitable, with certain exceptions. *Id., Art. 1058; § 3022.* The damages for which a tortfeasor is liable are those foreseen or which may have been foreseen at the time of the injury, and which may be a necessary consequence of the negligent act. *Id., Art. 1060; § 3024.*

In Puerto Rico, the doctrine of *causation in fact* ("causalidad adecuada") controls tort law, and pursuant to it, the only "cause" that generates civil liability is a condition which ordinarily produces, according to the general

14

experience, an injury.  *Elba A.B.M. et al. v. U.P.R.*, 125 DPR 294 (1994).  Under the theory of adequate cause, the issue is reduced to determining if the occurrence of the damage was to be expected in the normal course of events or, on the other hand, it is left out from every possible calculation.  *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 DPR 702, 710 (1990).  "Cause" is not any condition incapable of partially or totally generating the harm suffered.  *Arroyo v. E.L.A.*, 90 JTS 101; *Sociedad v. González Padín*, 117 DPR 94 (1986).

In cases claiming damages due to dangerous conditions, the plaintiff has the obligation to present evidence to provide: 1) the existence of the dangerous condition; 2) that defendant knew or should have known about its existence and failed to take any measures to correct it.  *Cotto v. Consolidated Mutual Insurance Co.*, 116 DPR 644.

In *Viñas v. Pueblo Supermarket* 86 DPR 33, 37 (1962) the Plaintiff suffered an accident in the parking lot designated to serve Pueblo Supermarket.  The Plaintiff got out of her vehicle and was walking from her car to the supermarket when she slipped and fell against the pavement. Therewas water and grease over the pavement and the sidewalk where the plaintiff slipped, but the court concluded, based on photographs taken of the area,  that the Plaintiff had another route that was not covered by the grease and water which she could have taken.

In *Viñas v. Pueblo Supermarket*, supra the Supreme Court of Puerto Rico affirmed:

> The term assumption of risk has two distinct meanings. In one sense (sometimes called its **\*49** 'primary' sense), it is an alternate expression for the proposition that defendant was not negligent, i.e., either owed no duty or did not breach the duty owed. In its other sense (sometimes called 'secondary'), assumption of risk is an affirmative defense to an established breach of duty. In its primary sense, it is accurate to say plaintiff assumed the risk whether or not he was 'at fault', for the truth thereby expressed in alternate terminology is that defendant was not negligent. But in its secondary sense, I.e., as an affirmative defense to an established breach of defendant's duty, it is incorrect to say plaintiff assumed the risk whether or not he was at fault. *Meistrich v. Casino Arena Attractions, 155 A.2d 90, 82 A.L.R.2d 1208 (N. J. 1959); Montellier v. United States, 202 F. Supp. 384, 394 (D.C.E.D.N.Y. 1962);* Keeton, Injuries From Open and Obvious Conditions, 33 Texas L. Rev. 1, 4 (1954).

The Puerto Rico Supreme Court found that the Plaintiff acted recklessly because even though there was another place where she could pass through, she chose the area that was covered with grease and water. The Supreme Court of Puerto Rico citing *Hubenette v. Otsby*, 6 N.W.2d 637, 638 (Minn. 1942) affirmed that [i]n the ordinary personal injury action where plaintiff puts himself in a position to encounter known hazards which the ordinarily prudent person would not do, he assumes the risk of injury therefrom. Such assumption of risk is but a phase of contributory negligence and is properly included within the scope of that term. *Mosheuvel v. District of Columbia, 191 U.S. 247, 257, 24 S.Ct. 57, 48 L.Ed. 170; Houston, E. & W. T. Ry. Co. v. McHale, 47*

*Tex.Civ.App. 360, 105 S.W. 1149; Restatement, Torts, § 466, comments c, d;*

*Prosser, Torts, § 51, p. 379.*

In *Deynes v. Texaco*, 92 DPR 222, 225 (1965) the Puerto Rico Supreme

Court stated:

> *The plaintiff was, at the same time, also negligent because, being an adult with full use of all his faculties, should walk with due and considerable care, and should look towards where he is walking, especially if the isle is wet.  It was daylight; the view of isle or sidewalk was clear; the battery of an automobile is a relatively big object, dark in color, easily visible in a floor that is light in color, as are the floors made of concrete, and an adult that walks with due and considerable care does not tread over such an object.*

The occurrence of the accident described in the complaint was due to the

fault and negligence of the deceased Ángel Luis and his companion that

evening, and the driver of Ángel Luis's vehicle, Crespo. Ángel Luis had already

been drinking alcoholic beverages before the accident occurred. He decided to

go out with a man that he barely knew to "have a good time". He entrusted the

driving of his vehicle to this man that he barely knew when he knew, or should

have known, that Crespo only had a learner's permit, and thus was not

qualified to drive under the supervision of an adult that was under the

influence of alcohol.  He was further aware that Crespo was not familiar with

the Cupey area inasmuch as he was the one giving instructions and directions

to Crespo regarding the place they were headed to in order to have fun. Ángel

Luis was the one that ordered Crespo to take the "Solo" lane in order to turn

left and was aware that Crespo ran the red light without taking precautions. Thus Ángel Luis clearly assumed the risk of whatever potential injury that he could suffer as he clearly put himself in harm's way. Ángel Luis did not conduct himself in a prudent and reasonable manner as described before; therefore, his accident was caused by his own fault and negligence, and that of third party defendant Crespo, 71 DPR 485 (1950).

Any other negligence involved in the occurrence of the accident can only be attributed to Crespo who, knowing that he did not have the skills or ability to drive the vehicle, inasmuch as he only had a learner's permit, and knowing that he was not familiar with the area, drove Ángel Luis's vehicle in a negligent fashion causing the accident and the latter's death.

The proximate cause of the accident was Ángel Luis' fault and negligence, and the fault and negligence of Crespo who was driving without a driver's license, without knowing the area, and with an adult "supervisor" under the influence of alcohol, and running a red light without taking the minimum precautions of confirming that there were no oncoming vehicles close by. Because of this, plaintiff's have no right to any compensation

To determine the reasonable value of pain and suffering plaintiffs must produce evidentiary factors to fairly and equitably evaluate them, proving that they are not a simple passing sorrow, but that plaintiffs' well being and happiness were really affected. *Ramos Rivera v. E.L.A.*, 90 DPR 828 (1964).

QBE Seguros (before known as QBE Óptima Insurance Company) issued policy number AP00010480 on behave of Marcel Andrés Pérez Rodríguez. Said policy is subject to its terms, conditions, limitations and exclusions. The policy limits are $100,000 per person, $300,000 per accident. The policy period is from June 27, 2013 to June 27, 2014.

The damages claimed are grossly exaggerated and are speculative. The appearing party did not act willfully, intentionally, maliciously, recklessly or negligently.

### A. <u>The Law of Puerto Rico Governing Insurance Contracts</u>

Article 1.020 of the Puerto Rico Insurance Code (26 L.P.R.A. § 102), defines "insurance" as a "contract whereby one undertakes to indemnify another, or to pay or provide a specified or ascertainable benefit upon determinable contingencies therein foreseen. It is characteristic of insurance that a number of risks are accepted, some of which will involve losses, and that such losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it. *Aseg. Lloyd's London v Cia Des. Comercial*, 126 D.P.R. 251, citing Couch on Insurance. Insurers are in the business of the acceptance of risks in return for compensation paid by the insured in the form of the policy premium. Aseg. Lloyd's London Couch, *supra.*

An insurance contract, like any other contract, constitutes the *law*

*between the parties* provided that the three essential conditions for its validity concur: *consent* of the contracting parties, a *definite object* that may be the subject matter of the contract, and the *consideration* for the obligation that may be established. Civil Code sec. 1213 (31 L.P.R.A. § 3391).  Both the insurer and the insured are bound to fulfill the policy terms and conditions. *Torres v. E.L.A.,* 130 D.P.R. (1992).  The premium is the consideration paid to an insurer for undertaking to indemnify the insured against a specified peril.  *Fidelity Sec. Life Ins. Co. v. Director of Revenue*, 32 S.W.3d 527 (Mo. 2000) ("a 'premium' is the consideration paid by an insured to an insurer for a contract of insurance"); *Amos v. State*, 711 So. 2d 1197 (Fla. 2d DCA 1998) (a "premium" is the amount of money paid in return for a contract of insurance).  *In re Pan American Paper Mills, Inc.*, 618 F.2d 159, 6 Bankr. Ct. Dec. (CRR) 319, 22 C.B.C. 890 (1st Cir. 1980).

### 1.    A Court Should Enforce the Unambiguous Terms     of an Insurance Policy.

The Insurance Code of Puerto Rico, 26 L.P.R.A. controls the interpretation of insurance contracts. *Roberto Melendez Pinero v. Levitt & Sons of Puerto Rico, Inc., 129 DPR 521*.  Article 11.250 of the Insurance Code of Puerto Rico provides that every insurance contract "shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or

application attached and made a part of the policy." 26 L.P.R.A. §§ 1125.  See

also, *Puerto Rico Electric Power Authority v. Philipps,* 645 F.Supp. 770, 772

(D.P.R.1986).

The Civil Code of Puerto Rico is considered a supplemental source of law

when the Insurance Code of Puerto Rico does not provide an interpretive

approach for a particular situation. *Puerto Rico Housing Bank v. Pagan

Insurance Underwriters,* 11 Official Translations 3, 8 (1981); 111 D.P.R. 1, 6;

*Gonzalez v. John Hancock Mutual Life Insurance Co.,* 927 F.2d 659, 661 (1st

Cir.1991). When construing the terms of an insurance policy contract, the

policy's language shall be interpreted according to its common and general

usage.  In re Reinforced Earth Co., 925 F.Supp. 913 at n. 21 (D.P.R.1996);

(Morales Garay v. Roldan Coss, 110 D.P.R. 701 (1981)).

Article 1233 of the Puerto Rico Civil Code provides that, "if the terms of

a contract are clear and leave no doubt as to the intentions of the contracting

parties, the literal sense of its stipulations should be observed."  Laws of P.R.

Ann. tit. 31 § 3471 (2002).

Under Puerto Rico law, insurance contracts are considered contracts of

adhesion that must be liberally interpreted in favor of the insured.  Quiñones

Lopez v. Manzano Pozas, 141 D.P.R. 139, 155 (1996); Metlife Capital, 224

F.Supp.2d at 383.  However, this general rule does not require courts to

interpret a clear and unambiguous clause that favors the insurer in a manner

that benefits the insured.  Quiñones Lopez, 141 D.P.R. at 155, González v. Coop. Seguros De Vida De P.R., 117 D.P.R. 659 (1986);  Metlife Capital, 224 F.Supp.2d at 382; Nahan, 62 F.Supp.2d at 424 n. 5.   When the terms, conditions, and exclusions included in an insurance policy are clear and unambiguous, the court must interpret and enforce the policy in accordance with the will of the parties.  Quiñones Lopez, 141 D.P.R. at 156, 1996 WL 499244.   In the absence of ambiguity, the contract terms bind the parties. Metlife Capital, 224 F.Supp.2d at 382.

The same treatment is also given to the exclusions contained within an insurance policy.  Each exclusion has to be clear and unambiguous and shall be interpreted in accordance with its function within the policy.  If "an exclusion clause is clear and unambiguous and applicable, then it does not afford coverage despite whatever inferences may arise from the other clauses of the contract." Each exclusion clause shall be read independently from the others and according to its functions in the policy's general agreement.  Such construction shall be seriatim, not accumulative."  *See* Melendez Pineiro v. Levitt & Sons, 91 JTS 95 (P.R.1991).  Each exclusion must be read in relation to the "general coverage agreement," and independently of the rest. Its reading must be "seriatim," not cumulative.   If an exclusion applies, there is no coverage regardless of the inferences or qualifications present in the rest. See, Melendez Pineiro v. Levitt & Sons, supra.

The First Circuit Court of Appeals has also stated that "while ambiguous terms may be constructed to favor an insured, we may not find a term ambiguous merely because it eliminated coverage." Littlefield v. Acadia Ins. Co., 392 F.3d 1, 8 (1st Cir.2004). In other words, "[c]lear provisions should not be strained to suggest ambiguity." Andover Newton Theological School, Inc. v. Continental Casualty Co., 930 F.2d 89, 93 (1st Cir.1991). "If there is no ambiguity in the insurance contract it is the duty of the court to apply to the words used their ordinary meaning and not favor either party in the construction." Couch on Insurance 3d Ed. § 22:10. The determination of whether an insurance policy conditions are unambiguous is a matter of law. Couch on Insurance 3d Ed. § 21:13.

The Supreme Court of Puerto Rico has also decided that courts may consider, when necessary, extrinsic evidence when evaluating an insurance policy. In Soc. de Gananciales v. Serrano, 145 D.P.R. 394, 1998 P.R.-Eng. 211, 409, the Supreme Court stated:

> However, whenever it is necessary to examine the entire policy to determine the scope of its coverage, we cannot be bound by an analysis that limits us to an evaluation of the language used. In these cases, we must take into account certain extrinsic elements that may shed light on the intention of the parties. These elements may vary according to the circumstances of each particular case, but they generally are: the parties' contracting intention, the premium agreed on, the circumstances surrounding the negotiation and the contract, and the practices and customs established by the insurance industry.
> The Court, further stated, citing

23

*A.A.A. v. Librotex,* 142 D.P.R.__ [42 P.R. Offic. Trans.__] (1997), that:

> [Though it must start with the expression contained in the spoken or written words,] [t]he interpretation of contracts and other juridical acts cannot stop at their strict or grammatical sense, and must delve basically into the intention of the parties and the spirit and purpose that have presided the business, it being inferred from the concurring circumstances and from the whole conduct of the interested parties, as sanctioned by art. 1.282[8] [1234 P.R.] ...

The Supreme Court also considers the "expectations" of the contracting

parties:

> Although there is no doubt that the language is essential, the premium is also a controlling factor to be taken into consideration when passing upon the expectations of the contracting parties, inasmuch as the premium is generally proportional to the risk assumed by the insurer. *A.A.A. v. Librotex,* 142 D.P.R.__ [42 P.R. Offic. Trans.__] (1997).

The damages claimed are grossly exaggerated and are speculative.  The

appearing party did not act willfully, intentionally, maliciously, recklessly or

negligently.

The complaint, as drafted, does not establish a causal relationship

between the damages claimed and the alleged negligence of the appearing co-

defendants.  Nevertheless, should the appearing party be held liable for any

negligent acts, which is expressly denied, it would be only in such proportion

as it is determined by the gross contributory negligence of plaintiff.

## II.   Certification of compliance with initial disclosures

The parties will exchange their respective mandatory initial disclosures on or before October 26, 2015.

## III.   Proposed Uncontested Facts

### A. Plaintiffs

1. Defendant Jean Andres Perez Rodriguez was driving a 2005 Nissan XTerra northbound on Rt. 176 on the night of the incident, September 27, 2013.

2. Defendant Marcel Andres Perez Rodriguez is the owner and the insured of the 2005 Nissan XTerra driven by Defendant Jean Andres Perez Rodriguez the night of the incident, September 27, 2013.

3. Angel Luis Fernandez Rodriguez was a passenger in a car driving by David Crespo southbound on Rt. 176 on the night of the incident, September 27, 2013.

4. Angel Luis Fernandez Rodriguez was the owner of the 2013 Honda Civic involved in the incident on September 27, 2013.

5. Defendant Jean Andres Perez Rodriguez crashed into Angel Luis Fernandez Rodriguez's car.

6. Defendant Jean Andres Perez Rodriguez was arrested at the scene on September 27, 2013 with a charge of driving while intoxicated after a breathalyzer test was conducted with a result of 0.082%.

7. On September 28, 2013 at approximately 5 pm, Angel Luis Fernandez Rodriguez died at "Centro Medico" from severe bodily trauma as a result of the incident on September 27, 2013.

## B. Individual Defendants

1. There are currently no pending criminal charges against Jean Andrés Pérez-Rodríguez pertaining to this lawsuit, because no probable cause was ever found.

2. On September 27, 2013, Jean Andrés was driving a vehicle owned by his brother Marcel Andres Pérez Rodríguez.

3. At the time of the accident the deceased Angel Luis Fernández Rodríguez had voluntarily transferred the possession of his vehicle, a 2013 Honda Civic, to David Crespo López.

4. Crespo López had only an apprentice driver's license.

5. Crespo López and Angel Luis Fernández Rodríguez barely knew each other.

## C.        Q.B.E. SEGUROS

1. QBE Seguros issued Policy No. number AP00010480; on behalf of Marcel Andrés Pérez Rodríguez. Said policy is subject to its terms, conditions, limitations and exclusions. The policy limits are $100,000

per person, $300,000 per accident. The policy period is from June 27, 2013 to June 27, 2014.

2. The policy limits are $100,000 per person, $300,000 per accident;

3. The policy period is from June 27, 2013 to June 27, 2014;

4. Insured is Marcel Andrés Pérez Rodríguez.

## IV.   <u>Listing of Witnesses</u>

## A. Plaintiffs

1. Maria Rodriguez Diaz
   2836 Hypoint Avenue
   Escondido, CA 92027(760) 443-4315

   Mrs. Rodriguez Diaz, the deceased Angel Fernandez Rodriguez's mother, may have discoverable information regarding all claims set forth in the complaint, other than technical aspects of negligence incurred by Defendants.

2. Maria Del C. Ferrer
   2836 Hypoint Avenue
   Escondido, CA 92027
   (760) 807-0139

   Mrs. Rodriguez Diaz, the deceased Angel Fernandez Rodriguez's sister, may have discoverable information regarding all claims set forth in the complaint, other than technical aspects of negligence incurred by Defendants.

3. Carmen Cruz
   1012 Lakeshore Circle
   Hoover, Alabama 35244
   (205) 422-7732

Mrs. Rodriguez Diaz, the deceased Angel Fernandez Rodriguez's sister, may have discoverable information regarding all claims set forth in the

complaint, other than technical aspects of negligence incurred by Defendants.

4. Puerto Rico Police Officer Jose Andujar Maldonado, Badge No. 81213 and any others involved in the investigation of the accident.

   Officer Andujar and another others involved in the investigation of the accident may have discoverable information regarding the accident and how Defendant Jean Andres Perez Rodriguez ran a red light crashing into Angel Luis Fernandez Rodriguez' car which led to his death.

5. Jean Andres Perez Rodriguez

   Jean Andres Perez Rodriguez may testify as to the incident and how he was driving while intoxicated when he crashed into the deceased's car.

6. David Crespo Lopez

   David Crespo Lopez may testify as to how Defendant Jean Andres Perez Rodriguez was driving erratically when he crashed into Angel Luis Fernandez Rodriguez' car.

7. Angie Chirino

   Angie Chirino may testify as to the occurrence of the accident because she was a witness at the scene, according to the police report.

8. Marcel Andres Perez Rodriguez

   Marcel Andres Perez Rodriguez may testify as to his ownership of the vehicle that Jean Andres Perez Rodriguez was driving while intoxicated when he crashed into the deceased's car.

9. Any other witnesses will be timely announced.

## B. Individual Defendants

   Without waiving the right to announce other fact and expert witnesses,

the individual defendants list the following witnesses:

1.   David Crespo – the extent and scope of his relationship with the deceased; the circumstances and/or events preceding the accident; Angel Luis Fernández Rodríguez's use of alcohol prior to the accident; The events that transpired after David Crespo and Angel Luis left the Hato Rey bar, including Angel Luis's decision to let Crespo drive his Honda Civic; David Crespo's conduct and actions after the accident.

2.   Jean Andrés Pérez Rodríguez – the circumstances and events preceding the accident; the conditions and characteristics of the road (Route 176) leading to the intersection where the accident took place; the accident itself; David Crespo's conduct and actions after the accident; the damages suffered by Jean Andrés as a result of the accident; and Jean Andrés's upbringing and the parental supervision by his father Marcel Pérez Graulau.

3.   Marcel Pérez Rodríguez – the ownership of the vehicle driven by Jean Andrés at the time of the accident; Jean Andrés's upbringing and the parental supervision by his father Marcel Pérez Graulau

4.   Marcel Pérez Graulau – the upbringing and parental supervision of Jean Andrés; and the damages suffered by Jean Andrés as a result of this accident.

## C.  Q. B.E SEGUROS

1.  Jean Andrés Pérez Rodríguez – Calle 2, Paseo Alto, San Juan.  He may testify regarding the occurrence of the accident; how David Crespo ran a red light, invaded his right of way and caused the automobile accident.

2.  José Soto and/or Andrés Rodriguez and/or a representative of QBE Seguros, before known as QBE Óptima Insurance Company, PO Box 195500, San Juan, PR 00919-5500; tel. (787)765-2100. Could testify regarding the terms and conditions of the insurance policy issued by QBE Seguros to Marcel Andrés Pérez Rodríguez; in particular, limits, coverages, who are insured.

3.  Marcel André Pérez Rodriguez – PO Box 352, Bayamón, PR – May testify concerning ownership of vehicle being driven by Jean Andrés Pérez Rodríguez on night of accident; the fact that Jean

Andrés was a minor under the supervision of his father; and what ever he knows about the occurrence of the accident.

4. David Crespo – Calle #17 Parcela 258, Torecilla Alta, Canóvanas – May testify that on night of incident deceased Ángel Luis Fernández picked him up at a bar and promised to take him and have a "good time". That Ángel Luis Fernández had been drinking; that he turned his car over to David Crespo to drive (even though they had barely met a month before); that he was driving in an area he was not familiar with where the accident occurred.

5. Expert in accident reconstruction, name to be announced, that will testify that regarding the occurrence of the automobile accident and how same was caused by Crespo.

6. Any witness, expert or otherwise, announced by any of the other parties in the case.

7. Any other any potential witnesses identified as a result of written discovery and further investigation.

## V.   Listing of Documentary Evidence

### A. Plaintiffs

1. Police Report and photos of Incident on September 27, 2013
2. Autopsy Report of Angel Luis Fernandez Rodriguez
3. Death Certificate of Angel Luis Fernandez Rodriguez
4. Photos of the deceased, Angel Luis Fernandez Rodriguez
5. "Centro Medico" Medical Records of Angel Luis Fernandez Rodriguez
6. Title and Registration of 2005 Nissan XTerra involved in the incident
7. Title and Registration of 2013 Honda Civic involved in the incident
8. Insurance policy by Defendant Optima
9. Any other documentary evidence will be timely announced.

## B. Individual Defendants

Without waiving the right to announce and use other documents, the

individual defendants include the following documents:

1. Puerto Rico Police Department accident report and related documents.
2. Transcript of Jean Andrés' Probable Cause (Rule 6) hearing.
3. Photos of the accident.
4. Videos from an adjacent Gulf station's surveillance system.
5. Written communications to and from Universal Insurance Company.
6. Sworn statement by David Crespo on October 3, 2013.

## C. Optima Insurance

1. Insurance policy number AP00010480 issued by QBE Seguros (before known as QBE Óptima Insurance Company);
2. The appearing party will notify any additional documents as they are identified to comply with the parameters of this disclosure.

## VI.   Itemization of To-Be-Conducted Discovery

### A. Plaintiffs

1. Interrogatories and Requests for Production of Documents were sent on September 25, 2015 for the following:

   Defendant Jean Andres Perez Rodriguez
   Defendant Marcel Andres Perez Rodriguez
   Defendant Marcel Andres Perez Graulau
   Defendant Optima Insurance

   Plaintiffs reserve the right to depose any of Defendants' witnesses.

### B. Individual Defendants

The individual defendants have yet to propound any written discovery. But they may soon serve written discovery—interrogatories, request for production of documents, and request for admissions—upon all or some of the parties.

The individual defendants reserve the right to depose any of the plaintiffs' witnesses.

### C. Q. B.E SEGUROS

Q.B.E Seguros hereby adopts the individual defendants' position on this front.

## VII.   Joint Proposed Discovery Plan

The joint proposed discovery schedule is as follows:

- Amendment to pleadings: October 26, 2015 (set by the Court)
- Joinder of parties: October 26, 2015 (set by the Court)
- Factual discovery completion: February 26, 2015
- Plaintiff's expert report(s):  March 25, 2016
- Defendant's expert report(s):– April 22, 2016
- Expert discovery completion: May 24, 2016
- Summary judgment motions: June 30, 2016

## VIII. Other Matters

### A. Individual Defendants

1. On even date, Pérez Graulau will be filing a motion for leave to file an amended complaint against its insurer, Universal Insurance Company.

2. Marcel Andres Pérez Rodríguez recently accepted the plaintiffs' request for waiver of summons. His answer is due on November 23, 2015.

WHEREFORE, the parties respectfully request that this Honorable Court take notice of the foregoing Joint Initial Scheduling Conference Memorandum.

Respectfully submitted,

In San Juan, Puerto Rico, this 26th day of October, 2015.

<u>s/David Efron</u>
David Efron
USDC-PR 125701
efron@davidefronlaw.com

<u>s /Joanne V. Gonzales Varon</u>
Joanne V. Gonzales Varon
USDC-PR 225513
jvgonzales@davidefronlaw.com

LAW OFFICES OF DAVID EFRON,P.C.
Attorneys for Plaintiffs
PO Box 29314
San Juan, PR 00929-0314
Tel. (787) 753-6455
Fax (787) 758-5515

**MELÉNDEZ TORRES LAW, PSC**
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, Puerto Rico 00917
Tel. 787.281.8100 / Fax 787.281.8310

s/Sonia I. Torres Pabón

USDC-PR No. 209310
storres@melendeztorreslaw.com
s/Heriberto López-Guzmán
USDC-PR No. 224611
hlopez@melendeztorreslaw.com

s/ Juan Carlos Fontánez-Nieves
USDC-PR No. 231408
jfontanez@melendeztorreslaw.com

s/ Arturo V. Bauermeister
USDC-PR No. 302604
abauer@melendeztorreslaw.com

*(Attorneys for Individual Defendants)*

---

s/DARIO RIVERA-CARRASQUILLO
**DARIO RIVERA-CARRASQUILLO**
**USDC-PR NO. 201104**
drc@drcprlaw.com
**RIVERA-CARRASQUILLO, MARTINEZ &
FONT**
I   CENTRO   INTERNACIONAL   DE
MERCADEO
#100 165 ROAD, SUITE 404
GUAYNABO, PR  00968
*TEL.(787)622-6999 / FAX.(787)622-6996*

*(Attorney for Q.B. E. ÓPTIMA INSURANCE COMPANY)*

34

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system.