IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA RODRIGUEZ DIAZ, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>JEAN ANDRES PÉREZ RODRIGUEZ, ET AL.,<br><br>Defendants. | **Civil No. 14-1651 (DRD)** |
| MARCEL PÉREZ-GRAULAU,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>UNIVERSAL INSURANCE COMPANY,<br><br>Third-Party Defendant. | |

**Marcel Pérez Graulau's Motion for Partial Summary Judgment**

TO THE HONORABLE COURT:

**Introduction**

Third-Party Plaintiff Marcel Pérez Graulau respectfully moves this Honorable Court to enter partial summary judgment in his favor, *see* Fed. R. Civ. P. 56 (a), ruling that his insurer, third-party defendant Universal Insurance Company's (Universal) refusal to

honor a duty-to-defend clause under an applicable umbrella policy violates the insurance contract. Because there are no genuine issues of material fact about the umbrella policy being an independent (so-called "standalone") policy with broad coverage, including coverage over the claims brought in this case against Pérez Graulau, and because the umbrella policy contains no relevant exclusions, Universal is compelled to defend Pérez Graulau. This Honorable Court should also award Pérez Graulau attorneys' fees and costs—mandated by Puerto Rico law when an insurer violates its duty to defend— and also rule that Universal henceforth lost control of Pérez Graulau's legal defense in the underlying diversity action.

**Procedural Background and Material Uncontested Facts**

For present purposes, the relevant facts are straightforward. At all relevant times, Pérez Graulau has had multiple insurance policies— "Personal Protection Package" No. 541-042-22666—with Universal. *See* Supporting Statement of Material Uncontested Facts (SUF), ¶ 1. Among these policies are two underlying policies for property and liability. SUF ¶ 2. And an umbrella policy that provides additional coverage and legal defense. SUF ¶¶ 3, 5.

The umbrella policy has its own definitions, coverages, exclusions, and conditions. SUF ¶ 5. Under the "Additional Coverages" Section, the umbrella policy makes it clear that Universal "will defend a suit against an insured resulting from an occurrence covered by *this policy*." This applies even if the suit is groundless. SUF ¶ 7 (emphasis added).

2

An "occurrence," under the umbrella policy, is "an accident or continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by an insured." SUF ¶ 9. And, as relevant here, an insured, among other things, "means . . . you [Pérez Graulau.]" SUF ¶ 10.

The plaintiffs filed this diversity tort action against (among others) Pérez Graulau, suing him under a vicarious-liability theory, *see* P.R. Laws Ann. tit. 31, § 5142, for damages allegedly caused by his son, codefendant Jean Pérez Rodríguez. SUF ¶ 13.[1]

Pérez Graulau's counsel promptly (December 4, 2015) referred the complaint to Universal for defense. SUF ¶ 15. And on December 17, Universal refused to defend Pérez Graulau. SUF ¶ 16. Universal also disclaimed liability and coverage for the claims limned in the plaintiffs' complaint, SUF ¶ 20; but that aspect of the matter is not currently before this Honorable Court.[2]

Given Universal's refusal to defend Pérez Graulau, he has had to retain counsel. *See* SUF ¶ 17. On October 27, 2015, he filed a third-party complaint against Universal, SUF ¶ 18, and, on December 21, 2015, Universal answered it, SUF ¶19.

---

[1] The plaintiffs filed their original complaint on August 27, 2014, Docket No. 1, but on October 2, 2014, they filed an amended complaint, which is the operative pleading. *See generally* Docket No. 6, ¶ 30 (alleging that Pérez Graulau is vicariously liable for his son's alleged "negligent acts and/or omissions"). According to the complaint, on September 27, 2013, Pérez Rodríguez had the accident that ultimately provoked this suit. SUF ¶ 13.

[2] As noted above, Pérez Graulau is moving only for a ruling that Universal violated its duty to defend, (count I); he is not moving (at this time) for a ruling concerning Universal's duty to indemnify (count II). This Honorable Court, then, need not delve into the insurer's duty to indemnify, which is different from its duty to defend. *See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig.*, 45 F.3d 564, 569 (1st Cir. 1995) (remanding for failure to "discuss the asserted distinctions between the duty to indemnify and a duty to defend").

**Applicable Law**

A movant is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Of course, Rule 56 allows a party to move for partial summary judgment: "A party may move for summary judgment, identifying *each claim* or defense — *or the part of each claim* or defense — *on which summary judgment is sought*." *Id.* (emphases added); *see Ortiz-Lebrón v. U.S.*, 945 F. Supp. 2d 261, 263 n. 3 (D.P.R. 2013). And partial motions for summary judgment are common vessels for adjudicating duty-to-defend issues. *See Bucci v. Essex Ins. Co.*, 393 F.3d 285, 288 (1st Cir. 2005).

Several guiding principles warrant discussion at the outset. First, the construction of an insurance policy is a question of law, *Nieves v. Intercontinental Life Ins. Co.*, 964 F.2d 60, 63 (1st Cir. 1992), which, in this diversity action, Puerto Rico law supplies it. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Interpreting the umbrella policy pursuant to Puerto Rico law, a court must construe it "according to the entirety of its terms and conditions as set forth in the policy." P.R. Laws Ann. tit. 26, § 1125; see *Vázquez–Filippetti v. Cooperativa de Seguros Múltiples de Puerto Rico*, 723 F.3d 24, 29 (1st Cir. 2013).

Second, "[i]f the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties," *Nieves*, 964 F.2d at 63; but if the wording is ambiguous, courts "must construe the provisions against the insurer." *López & Medina Corp. v. Marsh USA, Inc.*, 667 F.3d 58, 64 (1st Cir. 2012) (quoting *Great Am. Ins. Co. v. Riso,*

4

*Inc.*, 479 F.3d 158, 162 (1st Cir. 2007)) This is because insurance contracts generally are viewed as adhesion contracts, *Daniels–Recio v. Hosp. Del Maestro*, 109 F.3d 88, 91 (1st Cir. 1997), which compel a liberal interpretation in favor of the insured, *see Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., Inc.*, 167 F.3d 1, 7 (1st Cir.1999).

Finally, and as particularly relevant here, an insurer's duty to defend "is measured by the allegations in a plaintiff's complaint—if any of these allegations, read liberally, state facts that would be covered by a liability policy if proven true, then the insurer must provide a defense for the insured defendant." J *Jewelers Mut. Ins. Co. v. N. Barquet, Inc.*, 410 F.3d 2, 15–16 (1st Cir. 2005) (surveying Puerto Rico law).

**Argument**

**I.    By refusing to defend Pérez Graulau, Universal violated the standalone umbrella policy's duty-to-defend clause, thus breaching the insurance contract.**

The summary-judgment record makes clear that, although the umbrella policy contains a duty-to-defend clause, Universal has refused to defend Pérez Graulau in the underlying action. SUF ¶¶ 7–8, 16. Of importance here is the fact that the *umbrella policy* neither contains relevant exclusions nor explicitly incorporates the exclusions in the underlying policies. SUF ¶ 12.[3] Put simply, it has its own set of terms and conditions, which

---

[3] Although the burden to invoke an exclusion lies squarely with Universal, *see Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of Puerto Rico, Inc.*, 999 F. Supp. 213, 224 (D.P.R.1998), *aff'd*, 167 F.3d 1 (1st Cir. 1999); *Nascimento v. Preferred Mut. Ins. Co.*, 513 F.3d 273, 277 (1st Cir. 2008), Pérez Graulau nonetheless concedes, for argument's sake, that liability coverage under *the underlying liability policy—but not under the umbrella policy*—is removed by an applicable exclusion. *See generally* SUF ¶ 4.

5

provide coverage for an "occurrence" such as the unfortunate accident that prompted the underlying complaint and the vicarious liability claim filed against Pérez Graulau in this case. The definition of "occurrence" in the umbrella policy at issue is broad enough to encompass these matters. *See, e.g.*, *Maderas Tratadas v. Sun Alliance*, 185 D.P.R. 880 (2012) (holding that a vicarious liability claim against an employer pursuant to article 1803 of the Puerto Rico Civil Code (P.R. Laws Ann. tit. 31, § 5142) is an "occurrence" covered by a commercial umbrella policy).

The nub of this summary-judgment motion—a purely legal issue, *see Nieves*, 964 F.2d at 63—is straightforward: Is, as Pérez Graulau contends, the umbrella policy a "standalone" insurance contract? Or, as Universal has argued, is it a "follow-form" policy? *See, e.g.*, *Maderas Tratadas v. Sun Alliance*, 185 D.P.R. 880, 901 (2012) (confirming the broad scope of an umbrella policy, which can provide coverage for risks not contemplated in an underlying policy). *See, e.g.*, *Newmont USA Ltd. v. Am. Home Assur. Co.*, 795 F.Supp.2d 1150, 1168 (E.D.Wash. 2011) (discussing both types of policies).

This is a critical distinction. If the umbrella policy is a standalone, self-contained policy with its own terms and conditions, it need not incorporate the underlying policies' terms and exclusions. Put differently, it has a life of its own. And because of its independent nature, it can provide additional coverage not contemplated in the policies under the umbrella. "A stand-alone excess policy relies exclusively on its own insuring agreement, conditions, definitions, and exclusions to grant and limit coverage." *Milgard Mfg., Inc. v.*

6

*Liberty Mut. Ins. Co.*, 107 F. Supp. 3d 1171, 1178 (W.D. Wash.), (citations and internal quotation marks omitted), *order amended on reconsideration*, 2015 WL 4898902 (Aug. 17, 2015).

On the other hand, a follow-form policy "incorporates by reference the terms, conditions, and exclusions of the underlying policy." *Newmont USA Ltd.*, 795 F. Supp. at 1168 (quoting *Rights and Responsibilities of Excess Insurers* 78 Denv. U. L. Rev. 29, 29–31 (2000)); *accord* Black's Law Dictionary 877 (9th ed. 2009) (but calling it a "following-form policy"). But, "even where a policy is described as 'follow form,' it does not necessarily provide coverage that is substantively identical to the underlying one." *Insituform Techs., Inc. v. Am. Home Assur. Co.*, 566 F.3d 274, 279 n. 3 (1st Cir. 2009) (Boudin, J.) (citation omitted).

Pérez Graulau respectfully submits that the umbrella policy at issue here is independent from its underlying policies; it does not "follow form." As noted above, the umbrella policy nowhere adopts (not even implicitly) the underlying policies' exclusions or conditions. SUF ¶ 11; *see Newmont*, 795 F.Supp.2d at 1168 ("Typically a 'follow form' policy will contain[ ] a clear express clause such as 'Except as otherwise provided in this policy, this policy shall follow all the terms, conditions, definitions and exclusions of the controlling underlying policies.'") Contrast *Milgard,* in which the court held that the "Liberty Policy 'follows form' to the Illinois Policy," because the latter "expressly incorporates the terms and conditions of the Illinois Policy to the extent that those provisions do not conflict with provisions in the Liberty Policy." 107 F. Supp. 3 at 1179. No such proviso

exists here. Quite the opposite is true: The umbrella policy has its *own* definitions, coverages, exclusions, and conditions—it even has a section titled "*Additional* Coverages." SUF ¶¶ 5–6. Consider, for example, one of the umbrella policy's definition of "retained limit": "if the occurrence is not covered by the Required Underlying Insurance, *but is covered by this* policy, a deductible amount of $260.00 [applies.]" SUF ¶ 11 (emphases added).

By parity of reasoning, the umbrella policy can cover occurrences otherwise barred by the underlying policies. *See* SUF ¶ 5. Indeed, the umbrella policy's "occurrence" clause never refers to the underlying policies. *See* SUF ¶¶ 9, 12; nor does it say that Pérez Graulau's rights are those granted only by the underlying policies. To the contrary, its provisions point to the umbrella policy's independent nature. *Compare Newmont USA Ltd.*, 795 F. Supp. 2d at 1168 (declaring insurance policy to "follow-form" because an indemnity clause provided that "Travelers['] duty to indemnify is limited to accidents or occurrences, which are covered by the controlling underlying insurance"); *with* SUF ¶ 8 ("We will not defend the insured when the occurrence is covered by the required underlying insurance . . . .")

A strong inference follows: Occurrences barred by the underlying policies can nonetheless be covered by the umbrella policy. The same holds true for exclusions, for the underlying policies may contain an applicable exclusion that is nevertheless inapplicable under the umbrella policy. This makes sense. Although generally an umbrella policy's purpose is to "provide coverage for losses in excess of the limits of liability of underlying

8

policies," *Barrett Paving Materials, Inc. v. Cont'l Ins. Co.*, 488 F.3d 59, 67 (1st Cir. 2007), "umbrella policies often provide primary coverage for risks that the underlying policy does not cover." 15 STEVEN PLITT ET AL., COUCH ON INSURANCE § 220:32 (3d ed. 2015) (footnotes omitted). This Honorable Court should thus rule that the umbrella does not "follow form" to the underlying policies. It, in turn, provides additional coverage to Pérez Graulau for vicarious liability claims brought against him.

Turning to the umbrella policy's duty-to-defend clause, Pérez Graulau respectfully submits that it applies here. Recall that Universal's duty to defend depends only on the complaint's allegations. *See Jewelers Mut. Ins. Co.*, 410 F.3d at 16. "The court should examine all the allegations made by the plaintiff and, based on a joint interpretation of the same, determine whether there *is a possibility* that the insured is protected by the policy issued in his favor." *Pagán Caraballo v. Silva Ortiz*, 22 P.R. Offic. Trans. 96, 102 (1988) (emphasis added).

Viewed against this backdrop, the accident that allegedly caused the decedent's bodily injuries—provoking the underlying lawsuit and thus the vicarious-liability claims against Universal's insured, Pérez Graulau, *see* SUF ¶ 13 —is an "occurrence" under the umbrella policy. *See also* Docket No. 6, ¶¶ 17, 18, & 29–31. The same holds true for the vicarious parental liability claim against Pérez Graulau. This "possibility" can be readily deduced from a plain reading of the relevant clause, which defines "occurrence" as "an

accident or continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by an insured." SUF ¶ 9.

This confirms that the umbrella policy's independent duty-to-defend clause applies. But even assuming there is doubt about Universal's duty to defend Pérez-Graulau, it would have to "be solved in the insured's favor." *Pagán Caraballo*, 22 P.R. Offic. Trans. at 103 (citations omitted). Universal thus breached—and continues to violate—its duty to defend Pérez Graulau. Because Universal impermissibly denied Pérez-Graulau's legal representation, it breached the insurance contract (i.e., the umbrella policy). *See, e.g., González v. The Commonwealth Ins. Co.*, 1996 P.R.-Eng. 499, 056, 140 P.R. Dec. 673, 682–83 (1996). "The cause of action for breach of the contractual obligation to assume legal representation of an insured has been broadly discussed and accepted in our jurisdiction." *Id.* (citing Puerto Rico caselaw).

II. **Because Universal breached the insurance contract, Pérez Graulau is entitled to attorneys' fees and costs, and Universal should lose its prerogative to control Pérez Graulau's legal defense.**

Because Universal breached its duty to defend Pérez Graulau, he "is entitled to costs and attorney's fees." *Municipality of San Juan v. Great Am. Ins. Co.*, 813 F.2d 520, 521 (1st Cir.1987). Pérez Graulau respectfully requests that Universal be ordered to reimburse him for the attorneys' fees and costs incurred in defending the claims against him—and

in establishing Universal's duty to defend—from the date that Pérez-Graulau promptly requested legal defense. *See* SUF ¶ 15.  Of course, if this issue is resolved in his favor, Pérez Graulau will file a motion requesting fees and costs. *See* D.P.R. Civ. R. 54(a)–(b).

Last, but certainly not least, Pérez Graulau respectfully contends that Universal lost the right to control Pérez Graulau's defense in this action; he is thus entitled to control his own defense, including retaining counsel of his choosing. Although there appears to be no binding caselaw for this proposition, this Honorable Court may (and should) look at California, where it is well settled that an "insurer loses its right to control the insured's defense upon breach of its duty to defend." *Travelers Indem. Co. of Connecticut v. Centex Homes*, No. 03638, 2015 WL 5836947, at *4 (N.D. Cal.) (construing California law), *objections overruled* (Oct. 8, 2015).

This course of action—looking at California law to fill a gap—is nothing extraordinary. *See, e.g.*, *Morales v. Automatic Vending Serv.,* Inc., 3 P.R. Offic. Trans. 390, 396-98 (1975) (surveying California law). The Puerto Rico Supreme Court has made it clear that, "in deciding insurance actions that require the construction of policy clauses, we have used Anglo-American . . . rules." *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, P.R. Offic. Trans, 136 P.R. Dec. 881, 903 (1994).[4]  Following "the most advanced rules in North America law," *Municipality of San Juan*, 813 F.2d at 523, this Honorable Court should thus rule that Universal

---

[4] *Accord Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., Inc.*, 167 F.3d 1, 7 (1st Cir. 1999) ("[T]he Puerto Rico Supreme Court has recently established that since most of the insurance contracts sold in Puerto Rico are modeled after contracts drafted in the United States, both federal and state law principles

lost the right to control Pérez Graulau's legal defense in the underlying action. *Cf. Zurich Am. Ins. v. Lord Elec. Co. of Puerto Rico*, No. 09-1111, 2014 WL 710116, at *5 (D.P.R.) (holding that an insurer "has no one but itself to blame for such an alleged disparity between the rates. Had it continued representing [its insured] *it would have retained control of the litigations* costs"), *as corrected* (Feb. 28, 2014) (emphasis added).

**Conclusion**

For the reasons stated, summary judgment should be partially granted in favor of Pérez Graulau and against Universal on count I of Pérez Graulau's third-party complaint.

Dated: April 14, 2016                    Respectfully submitted,

                                  **s/Sonia I. Torres Pabón**
                                  Sonia I. Torres Pabón
                                  USDC-PR No. 209310
                                  storres@melendeztorreslaw.com

                                  **s/Heriberto López-Guzmán**
                                  Heriberto Lopez-Guzmán
                                  USDC-PR No. 224611
                                  hlopez@melendeztorreslaw.com

                                  **s/ Arturo V. Bauermeister**
                                  Arturo V. Bauermeister
                                  USDC-PR No. 302604
                                  abauer@melendeztorreslaw.com

---

are useful and persuasive."); *CH Properties, Inc. v. First Am. Title Ins. Co.*, 43 F. Supp. 3d 83, 94-95 (D.P.R.), *reconsideration denied*, 43 F. Supp. 3d 107 (2014) ("Because there does not appear to be conclusive Puerto Rico Supreme Court case law on that issue, the Court surveys legal authority to determine how the Commonwealth courts would likely rule."); *Ortiz de Fuentes v. Corporacion Insular de Seguros*, 699 F. Supp. 360, 363-64 (D.P.R. 1988), *aff'd*, 887 F.2d 259 (1st Cir. 1989) (Laffitte, J.) (holding that "Anglo-American common law is one of the sources upon which we are encouraged to draw when deciding insurance law issues").

**Meléndez Torres Law, PSC**
*Attorneys for Pérez Graulau*
MCS Plaza, Suite 1200
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel. 787.281.8100 / Fax 787.281.8310

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

**By: /s/ Heriberto López-Guzmán**