**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MARIA RODRIGUEZ DIAZ, ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JEAN ANDRES PÉREZ RODRIGUEZ, ET AL.,<br><br>    Defendants. | |
| MARCEL PÉREZ-GRAULAU,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>UNIVERSAL INSURANCE COMPANY,<br><br>    Third-Party Defendant. | Civil No. 14-1651 (DRD) |

**Marcel Pérez Graulau's Brief in Support of his Partial Summary Judgment and in Opposition to Universal's Cross Motion for Summary Judgment**

TO THE HONORABLE COURT:

### Introduction

The controversy before this Honorable Court hinges on whether Universal Insurance Company (Universal) has a duty to defend Pérez Graulau, pursuant to the terms of the umbrella insurance sold to Pérez Graulau as part of a personal protection package. The applicable standard is relatively low. Pérez Graulau has to establish that a "possibility" exists that he is protected by the umbrella. Pérez Graulau has more than met his burden, inasmuch as (1) the vicarious liability claim filed against him falls under the umbrella's

broad definition of "occurrence"; and (2) the umbrella insurance (which is subject to its own contractual provisions) neither contains relevant exclusions nor does it incorporates by reference the exclusions in the other insurances sold to Pérez Graulau as part of his personal protection package.

Universal, however, claims that the umbrella is a standard excess policy that simply provides coverage above the monetary limits of the underlying policies. *Ergo*, it does not provide primary coverage. Its position is flawed for several reasons:

(1) the umbrella insurance meets the definition of a stand-alone excess policy, that relies exclusively on its own insuring agreement to grant and limit coverage;

(2) the umbrella's definition of "retained limit" specifically confirms that it provides primary coverage for occurrences not covered by a required underlying insurance; and

(3) this Honorable Court has held that when an excess insurer like Universal uses the terms "covered" or "not covered" (as Universal did in the umbrella's "retained limit" definition) it is agreeing to provide primary coverage when the terms of the underlying policies do not provide coverage. (*Metlife Capital Corp., v. Westchester Fire Ins. Co.*, 224 F. Supp. 2d 374, 389 (D.P.R. 2002))

## Applicable Standard

To trigger Universal's duty to defend in this case, Pérez Graulau only has to establish that "…the **possibility** exists, from a liberal interpretation of the pleadings, that the insured is protected by the policy issued, regardless of the final outcome of the case." *Metlife Capital Corp., v. Westchester Fire Ins. Co.*, 224 F. Supp. 2d 374, 388 (D.P.R. 2002)

(emphasis added). As set forth in detail below, Pérez Graulau has more than met this relatively low standard.

## Argument

**I.   It is undisputed that Universal sold an umbrella insurance to Pérez Graulau**

Universal denies it has a duty to defend claiming that the umbrella it sold to Pérez Graulau is not a policy of its own. The argument is factually incorrect and of no legal consequence.

Citing article 11.140 (3) of the Puerto Rico Insurance Code (P.R. Laws Ann. tit. 26, § 1114) Universal concludes that the umbrella is not a policy because the specific contractual terms and conditions applicable to the umbrella (Section IV of the insurance contract) do not specify (i) the name of the parties to the contract; (ii) the amount of the insurance and its benefits; (iii) the time at which the insurance takes effect and the period during which the insurance is to continue; and (iv) a statement of the premium. See, Dkt. No. 109 at p. 6. Universal ignores the fact that the umbrella's Declarations page includes all of this information. The umbrella's Declarations specifically names Pérez Graulau as the insured, identifies the policy period as "12:00 A.M. STANDARD TIME AT LOCATION DESIGNATED PREMISES FROM: 11/03/20112 TO: 11/03/2013", sets the limit of liability at $1,000,000, and includes a schedule of primary insurance. See, Perez-Graulau's additional statement of uncontested facts (ASUF) ¶ 1. Significantly, the umbrella's Declarations also include the specific annual premium (*i.e.* $252) charged by Universal for the umbrella insurance. ASUF ¶ 2. The other insurances comprising the package also have their own

3

Declarations, confirming their independence from each other. See Universal's Statement of Uncontested Facts ¶ 7.

Universal certainly cannot dispute that it sold an umbrella insurance to Pérez Graulau as part of the personal protection package. The same holds true for the liability and property insurances it issued on behalf of Pérez Graulau. As Universal concedes, the insurance contract specifically states that "**[i]n consideration of the payment of the required premium, the company does insure the Insured, for those coverages for which a √ is marked in the schedule below** and subject to the provisions, stipulations, and agreements of such Coverage Parts…" See Universal's Statement of Uncontested Facts ¶ 4 and Dkt. No. 109 at p. 9 (Emphasis added). In all, Universal agreed to provide coverage to Pérez Graulau for three different insurance products. And, tellingly, as consideration for such coverages it charged Pérez Graulau a separate premium for each of them. ASUF ¶ 3. Pérez Graulau did not pay a premium for the personal protection package itself.

Moreover, Universal should be estopped from arguing that the umbrella itself is not a policy, inasmuch as it does recognize that the liability insurance (Section III of the insurance contract) sold together with the umbrella (Section IV of the insurance contract) is in fact a policy of its own. "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 228 (2000). Universal maintains that the liability insurance "is the *Listed Underlying Policy* contemplated by, and defined, in the *Conditions Applicable to Section IV*." See, Dkt. No. 109 at p. 13 (Emphasis in the original).

4

**II.     The claim brought against Pérez Graulau is an "occurrence" covered by the umbrella insurance**

Pérez Graulau was sued in the instant case under a parental vicarious responsibility theory, pursuant to Article 1803 of the Puerto Rico Civil Code. Such a claim constitutes an "occurrence" covered by the umbrella insurance (i.e. Section IV of the insurance contract). In this regard, the insurance contract stipulates that the umbrella insurance is subject to its own terms and conditions: "[i]n consideration of the payment of the required premium, the company does insure the Insured, for those coverages for which a √ is marked in the schedule below and **subject to the provisions, stipulations, and agreements of such Coverage Parts**…" See Pérez Graulau's SUF ¶ 5 (Emphasis added). The umbrella insurance, in turn, broadly defines "occurrence" as "…an accident or continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by an insured." See Pérez Graulau's SUF ¶ 9. Universal does not appear to be contesting that this expansive definition encompasses Article 1803 claims.

Moreover, the Puerto Rico Supreme Court opinion in *Maderas Tratadas v. Sun Alliance*, 185 D.P.R. 880 (2012) also supports this proposition. In *Maderas Tratadas*, Universal was asserting that the term "occurrence," under an umbrella insurance precisely sold by it as part of a commercial protection package, did not cover Article 1803 claims. Tellingly, the Supreme Court disagreed with Universal's position.

Universal, however, argues that *Maderas Tratadas* is distinguishable because there was no applicable exclusion in that case. See, Dkt. No. 109 at pp. 7-8. Universal misses the

5

point. Pérez Graulau relied on the *Maderas Tratadas* holding because it serves as additional confirmation that the vicarious liability count against him is an "occurrence", as that term is defined in the instant umbrella policy. The similarity between the definitions of "occurrence" in *Maderas Tratadas vis-à-vis* this case is striking.

| **Definition of "occurrence" in *Maderas Tratadas*** | *Definition of "occurrence" in the instant case* |
|---|---|
| "an accident, including continuous or repeated exposure to conditions, which result in personal injury, property damage … neither expected nor intended from the standpoint of the insured." | "an accident or continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by the insured." |

The holding in *Maderas Tratadas* had nothing to do with whether the umbrella insurance at issue there was a standard excess policy or not. Accordingly, Universal failed to contest the true holding in *Maderas Tratadas* and, consequently, it recognizes that the parental vicarious liability claim against Pérez Graulau is a covered "occurrence."

### III. The three insurances sold to Pérez Graulau have separate and distinct exclusions

The gist of Universal's argument is focused on a specific exclusion of the liability insurance in the personal protection package. Universal contends that if any of the insurances sold as part of the package denies coverage then the entire package (including the umbrella insurance) lacks coverage as well. See, Dkt. No. 109 at p. 13. Universal cites no legal authority or contractual provision in support of this self-serving proposition. This position, additionally, goes against the general rule that "exclusion clauses should be interpreted

6

restrictively in order to comply with the policy's intent, that is to provide protection to the insured." *Metlife Capital Corp., v. Westchester Fire Ins. Co.*, 224 F. Supp. 2d at 382.

Put differently, Universal is essentially claiming that all the insurances sold with its personal protection package have the same exclusions. A reading of the insurance contract shows otherwise. There is no single contractual provision supporting this assertion. On the contrary, each of the liability, property and umbrella insurances sold with the package have their own particular set of exclusions. ASUF ¶ 4. And, more importantly, the terms and conditions applicable to each of these insurances are devoid of language even suggesting that the exclusions listed in each one of them can be extrapolated to exclude coverage in the other insurances. Compare this contractual void to the actual contractual limitations set forth in *Metlife Capital*, specifically stating that "IF COVERAGE IS NOT PROVIDED BY "UNDERLYING INSURANCE," COVERAGE IS EXCLUDED FROM THIS POLICY." *Metlife Capital Corp., v. Westchester Fire Ins. Co.*, 224 F. Supp. at 383. No such words or similar contractual language are present in the instant case.

IV. **The umbrella is a stand-alone insurance with primary coverage**

Contrary to follow-form umbrella policies, which incorporate the exclusions of the underlying insurances, "[a] stand-alone excess policy relies exclusively on its own insuring agreement, conditions, definitions, and exclusions to grant and limit coverage." *Milgard Mfg., Inc. v. Liberty Mut. Ins. Co.*, 107 F. Supp. 3d 1171, 1178 (W.D. Wash), (citations and internal quotation marks omitted), *order amended on reconsideration*, 2015 WL 4898902 (Aug. 17, 2015). Universal does not contest that Pérez Graulau's umbrella "stands-alone" with its

own set of terms and conditions. Instead, it suggests that a reading of all the insurances sold with the personal protection package shows that the umbrella at issue is merely a standard excess policy. There are no contractual provisions corroborating that the umbrella insurance works *exclusively* as a standard excess policy. To the contrary, the umbrella's definition of "Retained Limit" specifically confirms that it provides primary coverage for an occurrence not covered by a "Required Underlying Insurance."

> 10. Retained limit means the greater of:
>     a. the total amount of the limit of liability of the Required Underlying Insurance or,
>     b. **if the occurrence is not covered by the Required Underlying Insurance, but is covered by this policy**, a deductible amount of $250.00.

See Pérez Graulau's SUF ¶ 11. (Emphasis added).

This Honorable Court has held that "**when an excess insurer uses the term 'covered' or 'not covered,' it is agreeing to drop down only in the event that the terms of the underlying policy do not provide coverage for the occurrence or occurrences in question.**" *Metlife Capital Corp., v. Westchester Fire Ins. Co.*, 224 F. Supp. 2d at 389 (citing *Am. Spec. Risk Ins. Co. v. A-Best Products, Inc.*, 975 F. Supp. 1019, 1022, (N.D. Ohio 1997), *aff'd sub nom. Am. Spec. Risk Ins. Co. v. A-Best Products, Inc.*, 166 F.3d 1213 (6th Cir. 1998)). (Emphasis added). The same reasoning applies here. The plain language of the umbrella recognizes that it is a capable of providing primary coverage on instances where its underlying insurance does not. "Insurers providing excess coverage may offer 'umbrella policies' that differ from standard excess policies in that they are designed to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary

coverage)." *Metlife Capital Corp., v. Westchester Fire Ins. Co.*, 224 F. Supp. 2d at 382-383 (internal quotations omitted).

Accordingly, any coverage gap in the other insurances that are part of Pérez Graulau's personal protection package are filled by the umbrella insurance, as long as the umbrella's definition of "occurrence" is met. The fact that the liability insurance does not cover the parental vicarious liability claim against Pérez Graulau is of no consequences because the umbrella insurance properly fills this coverage gap.

Universal does not challenge the significance of the terms "covered" or "not covered" nor does it distinguish the holding in *Metlife Capital*. Instead, it focuses on the phrase "by this policy" in the Retained Limit definition and claims that such phrase "…refers to the Universal Personal Package as a whole…" See, Dkt. No. 109 at p. 12. Again, Universal cites no supporting contractual or legal provisions. To strengthen its argument, Universal further contends (also without any contractual or legal support) that "[t]he Personal Protection Package is intended to be sold as one insurance policy…" *Id*. Universal cannot conveniently interpret, based on mere say so, the phrase "by this policy" to limit the coverage provided by the umbrella insurance. The personal knowledge required by Rule 56(c)(4) of the Federal Rules of Civil Procedure "must concern facts as opposed to conclusions, assumptions, or surmise" *Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001).

If any, the term "policy" as used in the umbrella insurance's particular terms and conditions is an ambiguous term that must be interpreted in favor of Pérez Graulau. See, e.g, *López & Medina Corp. v. Marsh USA, Inc.*, 667 F.3d 58, 64 (1st Cir. 2012) (quoting *Great*

*Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 162 (1st Cir. 2007)). The term "policy" is not a defined term under the insurance contract. The umbrella's terms and conditions constitute an adhesion contract. And, significantly, Universal drafted the terms and conditions of the umbrella insurance in such a way that the word "policy" was loosely used to refer to the umbrella insurance itself.

Moreover, in a confusing twist, Universal appears to be arguing (in the alternative) that subsection "b" of the Retain Limit's definition only applies "…in situations in which the underlying insurance … is provided by an insurer other than Universal." See, Dkt. No. 109 at p. 12. This is pure speculation on Universal's part, as nothing in the insurance contract confirms this. Universal improperly tried to support this purported factual distinction with a declaration under penalty of perjury by one its executives, which is rife with unsubstantiated legal conclusions. In fact, assuming for argument's sake that such a statement is admissible, it takes Universal nowhere because subsection "b" of the Retain Limit's definition refers to the concept "Required Underlying Insurance" (a purportedly defined term) but said term is nowhere defined in the umbrella's Definitions section. Such a contractual void cannot be conveniently filled by Universal with a self-serving declaration. Rule 56(c)(4) of the Federal Rules of Civil Procedure.

## Conclusion

For the reasons stated, summary judgment should be partially granted in favor of Pérez Graulau and against Universal on count I of Pérez Graulau's third-party complaint. For the same reasons, Universal's cross-motion for summary judgment should be denied.

Respectfully submitted this 23rd day of June, 2016.

> **Meléndez Torres Law, PSC**
> *Attorneys for Pérez Graulau*
> MCS Plaza, Suite 1200
> 255 Ponce de León Ave.
> San Juan, Puerto Rico 00917
> Tel. 787.281.8100
> Fax 787.281.8310
>
> **s/Sonia I. Torres Pabón**
> Sonia I. Torres Pabón
> USDC-PR No. 209310
> storres@melendeztorreslaw.com
>
> **s/Heriberto López-Guzmán**
> Heriberto Lopez-Guzmán
> USDC-PR No. 224611
> hlopez@melendeztorreslaw.com
>
> **s/Juan Carlos Fontánez-Nieves**
> **Juan Carlos Fontánez-Nieves**
> USDC-PR No. 231408
> jfontanez@melendeztorreslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

> **By: /s/ Heriberto López-Guzmán**